Anderson, J.,
delivered the opinion of the court.
The appellees are j udgment creditors of Wm. M. Mitchell. Before they obtained their judgments, the debtor conveyed his land and other property to the appellant, in trust to secure other creditors. Before a sale made under the deed of trust, the grantor, with the assent and co-operation of the trustee, and the principal creditor secured by the deed of trust, sold the lands to LeeHuckols and A. F. Gregory for $6,000, payable one half in cash, and the residue in two equal payments, in one and two years. On the 16th of August 1859, William M. Mitchell and wife, and Eli C. Hale and Martin Hale, executed a deed conveying said lands, with general warranty, to the said Andrew F. Gregory and Lee Huckols. On the 27th of January 1859, Eli C. Hale, having paid off all the debts secured by the deed of trust, paid over, as he claims, the surplus to Wm. M. Mitchell. In February 1859, Wm. R. Horne, John Dickenson, James W. Clark, and Dickenson and Huckols, judgment creditors of said Wm. M. Mitchell, and appellees here, filed their hill in this suit against Eli C. Hale, (the appellant), Martin Hale, William M. Mitchell, A. F. Gregory and Lee Uuekols, to set aside the deed of trust as fraudulent in its inception and administration, and to subject the said *121 lands of "Win. M. Mitchell to the satisfaction of their judgments, and for general relief.
In the progress of this suit A. E. Gregory filed his bill against his co-defendants and the plaintiffs, alleging that he had bought out the interest of his joint purchaser, Lee Huckols, in the said lands, and had taken upon himself the payment of their joint bonds for the deferred payments of the purchase money ; that they have been sued upon one of those bonds, which showed upon its face that it was given for the lands they bought of Mitchell ; that a judgment would be rendered against them at the then present term of the court; that he had been notified by some of the judgment creditors, that they claimed a lien upon the said lands to satisfy their judgments, and forbidding him to pay to Mitchell or Hale the balance of the purchase money due from him ; and that this suit was instituted for the pui’pose of subjecting his said lands to satisfy the said judgments, which he prays may be made a part of his bill, and that he be permitted to pay the money into court, to be applied as the court may determine was right and proper ; and that Eli O. Hale be perpetually injoined from proceeding to execute the said judgment. The injunction was granted, and the money ordered to be paid into the hands of Eli C. Hale, who was appointed the receiver of the court, upon his giving bond and security according to law. He gave the bond, and the money was paid to him, and is nowin the custody of the court.
"What interest had William M. Mitchell in the lands after he gave a deed of trust % Whatever interest he had was liable for his other debts. The whole of a man’s property is liable for his debts. A mortgage is regarded in equity as a mere security for the debt, and only a chattel interest. And until a decree of foreclosure, the mortgagor continues the real owner of the fee ; and may lease, sell, and in every respect, deal with the mortgaged premises as owner. The equity of redemp *122 tion is descendible by inheritance, devisable by will, and alienable by deed, precisely as if it were an absolute estate of inheritance at law. 4 Kent Com. 157, 159, 160; Hutchins v. King, 1 Wall. U. S. R. 53. It was entirely competent, therefore, for Mitchell, after the conveyance of his land in trust for the payment of debts, to make an absolute conveyance of them to Kuckols and Gregory. And his deed was good to pass title to them, subject, however, to the incumbrance of the deed of trust. And after the payment of the whole of the debts secured by the deed of trust, the grantor and his vendees, by operation of the statute, are entitled to hold the land, at law or in equity, notwithstanding a conveyance has not been made by the trustee. Code, chapter 135, see. 21, p. 612. But the purchase of these vendees is subject, not only to the incumbrance of the deed of trust, but also to the lien of the judgment creditors, of which they had notice when they purchased. The judgments being subsequent to the date of the deed of trust, they would be postponed until the deed of trust was satisfied. Their lien attached only to such interest as the grantor, their debtor, retained in the lands, after executing the deed of trust; that is to his equity of redemption. “It is a settled rule,” says J. Green, in Haleys v. Williams, 1 Leigh, p. 140, “in respect to the satisfaction of judgments, and other liens upon an equitable fund, that all are to be paid according to their priority in point of time ; “qui prior estin tempore, potior est in jure.” In that case the fund was equitable so far as the judgment creditors were concerned; the legal title being in trustees, for the security of other creditors, who had thereby a priority over the judgment creditors: which is precisely this case.
In Michaux's Adm’r v. Brown, 10 Gratt. 612, 619, J. Allen says: “Although this equity of redemption could not be taken in execution at law, it was upon the general principle of a court of equity, bound in equity, as it *123 would have been bound at! law’’if it had been a legal estate. And in equity the judgment is a lien upon the whole of the debtor’s equitable estate.
It is perfectly clear, that whatever interest ¥m. M. Mitchell had in these lands, after he had conveyed them in trust, was subject to the lien of his subsequent judgment creditors; and that his vendors, who purchased with notice of those judgments, purchased subject to the judgment liens, and that whatever portion of the purchase money remained, after satisfying the incumbrance of the deed of trust, was liable to satisfy the judgments ; and the land in the hands of the vendees, is bound for the payment thereof to the judgment creditor. Hence, it follows, that their bond for the purchase money, in the hands of Mitchell,' or of the trustee, remaining after the trust creditors were satisfied out of the trust fund, was liable to the judgments; and no one could release the vendees, or the land they had purchased, from the judgment lien, except the judgment creditors themselves. This fund is now in the custody of the court, being claimed on the one hand by Eli O. Hale, who held the bond of the purchaser, and on the other hand, by the judgment creditors. The Circuit court held, that the judgment creditors were entitled to it; and decreed that it should be applied in satisfaction of their judgments, according to their priority. The judgment creditors not having released their lien, upon what ground can this fund be claimed for Eli C. Hale? It is contended, by his counsel, with great earnestness and ability, that his duty as trustee only required him to pay the debts secured by the deed of trust; that he was not required to take notice of any outside claims ; but by the express and imperative terms of the statute, Code, ch. 117, sec. 6, p. 563, after paying the debts secured by the deed of trust, he was required to pay the surplus to the grantor. I cannot agree with counsel in this construction of the statute. I cannot *124 think that it was the intention of the legislature to require or even to authorize the trustee to pay the surplus " fund into the hands of an insolvent grantor, when other creditors, outside of the deed of trust, were entitled to it, as against the grantor or his assignees; of which the trustee had notice. This provision of the statute imposed no new obligation or duty upon the trustee, and conferred no new or cumulative right upon the grantor. Previous to the statute, and independent of it, I apprehend, after the payment of the whole sum, or the accomplishment of the whole purpose, for which the deed of trust was given, it was the duty of the trustee to pay over to the grantor any surplus which remained in his hands, even when there was no express provision in the deed requiring it, and it was a right -which the grantor could demand and enforce in a court of equity. But if it was known to the court in such proceeding, that there were judgment creditors who had a lien upon the fund, it would not compel the payment to the grantor, but would inhibit the trustee from making payment to him. I do not think it was the design of the legislature to make any change in the rights and obligations of the grantor and trustee ; but as they stood before the statute, they remain. The terms of the statute are, shall pay to the grantor or his “ assigns.” There might be a party claiming the fund, under an assignment from the grantor, and adversely to him, of which the trustee had notice. "Will it be contended that the trustee would be justified in ignoring the assignee, and paying the fund over to the grantor % Does the assignee occupy any higher ground than the judgment creditor, who is invested with the right to it by operation of law ? Besides, it does not seem to have been designed by the legislature, that all deeds of trust should conform to these provisions of this statute, or derive their efficacy from them. The contrary' intention plainly appears from the eighth section, which provides, “that any deed, or part of a deed, which shall *125 fail to take effect, by virtue of this chapter, shall nevertheless be as valid and effectual, and shall bind the parties thereto, so far as the rules of law and equity will permit, as if this chapter had not been enacted.” The fifth section merely gives a formula for a deed of trust to convey the property to the grantor, in trust for the security of debts or the indemnity of sureties : and there it stops. It seems not to contemplate directions in the deed to the trustee for the execution of the trust. The sixth section provides for that, and pi’escribes a general rule fqr the direction of the trustee in the execution of such deeds of trust. But where the deed provides how the trust shall be executed by the trustee, as deeds of trust universally did before these sections were enacted, and as was done in this case, such deed derives no efficacy from those sections of the statute, which have no application to it; and the trustee, in the execution of the trust, must be governed by the instructions contained in the deed, and by the rules of law and equity which are applicable. And although the deed in this case provides how the trustee shall apply the fund, it contains no provision directing him to pay the surplus to the grantor, so that if there should be a surplus, he must dispose of it according to the rules of law and equity.
But, if the trustee paid over the surplus of the purchase money to the grantor, how is it that he is now claiming it himself ? The truth is, at the time of his alleged settlement of his administration of the trust fund, the deferred payments of the purchase money were not due ; and the trustee, to accomplish his ends, whether rightful or wrongful, seems to have deemed it necessary to resort to indirection. The principal actors on the arena were himself, his brother Martin, who appears as the principal creditor secured by the deed, and Wm. M. Mitchell, his brother-in-law, the failing debtor. The execution of the deed may have been all fair. But it is a little remarkable, that the debt claimed by Martin *126 Hale had grown from between five and six hundred dollars, from the time he informed a witness, Robert Vaughn, that Mitchell was owing him that amount, to $2,158.37, at the time of payment by the trustee. And it is also remarkable, that in so short a time from the date of that conversation, until the execution of the deed of trust, the period in which the most of this account accrued, he was unable in his answer to give the items of his account. There is another fact to which I must advert in this connection. It is that the trustee, as appears from the commissioner’s report, on the day of sale sold a part of the trust property, to satisfy, as he alleged, executions in the hands of R. Vaughn, a constable, to the payment of which he applied $151.11 of the trust fund, of which no entry is made in his account as trustee. The commissioner states that he had not seen the executions, and could not say whether they were valid. The witness, Robert Vaughn, to whom I have already referred, is of the same name, and I take him to be the same person. He says in his deposition, that he had claims against ¥m, M. Mitchell, to the amount of $150, (very nearly the amount which Eli O. Hale paid him out of the trust fund), and that he was informed, that provision had been made for it in the deed of trust, by adding it to Martin Hale’s debt, who was to pay him. That some time afterwards, he saw Martin Hale and named the case to -him ; and Martin Hale said yes, that was the case, hut ¥m. M. Mitchell had teased him out of the money. How is this! Martin Hale incorporates the debt due from Mitchell to Vaughn with his debt, and assumes to pay Vaughn. And the whole is secured to him by the deed of trust, and is paid to him out of the trust fund ; and instead of paying Vaughn according to his own account, he pays it to Mitchell; and Vaughn’s debt, which Hale was bound to have paid out of his own pocket, is paid out of the trust fund. Was this dealing fairly towards the judgment *127 creditors ? If the facts he so, it was a palpable fraud upon them, and throws discredit, upon the bona fi&es, of the whole transaction. But the sale to Huckols aud ■ Gregoi’y was not made in the way, and upon the terms, prescribed by the deed of trust; which required the sale to be made on the premises, to the highest bidder, for ready money, after advertising the sale for at least thirty days, &c. It was made privately, for- half cash, aud the residue in equal payments of one and two years. This does not invalidate the sale, it being made by the grantor, with the consent aud active co-operation of the trustee and the principal trust creditor, and the acquiescence of the others, and was a good sale ; and there is nothing in the record to show that it was not fair and bona fide. But the trustee deems it necessary to resort to indirection, in order to give validity to that which was valid. He goes through the form of offering for sale to the highest bidder, at public auction, the same land, which he had previously united with Mitchell and'his brother in selling to Huckols and Gregoi’y, aud for the title to which, they had bound themselves in a penalty of $12,000 ; and had the same cried out to his brother at the price of $5,800. In this, nothing wrong was intended ; but it was only an ostensible sale, and made, as admitted by Eli G. Hale in his answer, and proved by the evidence in the cause, only because it was thought to be necessaiy, to comply with the form of the deed of trust to give validity to the real sale, which had been made to Lee Huckols and A. E. Gregory.
It seems that the real purchasers had made the hand payment to the trustee, in paper and money, and had given their two joint bonds to Eli O. Hale for $1,500 each, payable in one aud two years, for the residue of the purchase money ; and that Eli G. Hale, thereupon, satisfied the trust debts, and paid over to the grantor, what he claims to have been the surplus, and retained the vendees’ bonds for the residue of the purchase money, *128 as due to Mm individually, in consideration of the advances which he had made. And he contends, that "inasmuch as the statute imperatively required him to pay over the surplus to the grantor, and he had advanced the money out of his own pocket, he is entitled to the bonds of the vendees for the residue of the purchase-money.
We have seen that such a pretension as to the effect of the statute is untenable. But upon no construction did the statute require him to advance his own funds in order to pay the surplus to the grantor. It could be construed by no one, to require him to do more than to pay over the surplus of the trust fund, to wit, the bonds of the vendees, for the deferred instalment of purchase money. It was not incompatible with the sinceres! desire to obey the law, and to discharge his trust, that he should have kept his own money, and turned over to the grantor the bonds of the vendees. By advancing his own money, as he asserts he did, to pay over the surplus to the grantor, and taking the vendees’ bonds to himself, he esposed himself to the imputation, though it might be unjust, of seeking to hinder and defeat the judgment creditors in the enforcement of their liens. But there are other circumstances which cannot be overlooked. He gave a receipt to Lee Huekols and A. F. Gregory for $6,000 in full of the purchase money for the tract of land on which William Mitchell then resided ; and to A. F. Gregory for $175 in full of the purchase money of Wm. Mitchell’s interest, iu what was called the mill tract; thus to appearance discharging the lions. And instead of paying off' the judgment creditors, and discharging the liens, as far as the trust fund would enable him to do, and as he had by his solemn obligation bound himself to Huckols and Gregory, in the penalty of $6,000, to do, he procures the surrender of that obligation by A. F. Gregory to Martin Hale, upon a pretest which must be characterized as flimsy, and the *129 names of the obligors were torn off in his presence by Martin Hale. Thus by his contrivance the land was, in appearance, discharged of its liability to the judgment-creditors by the evidence which he furnished the vendees of their payment in full of the purchase money, and the destruction of the irrefragable evidence of his and the vendees’ knowledge of the judgment liens, and of his obligation to discharge them. He may have then felt himself safe in paying over the surplus to an insolvent grantor, and in advancing the money for the purpose before the purchase money was due. But can such a contrivance, if so designed, deprive the judgment creditors of their right to satisfaction out of the purchase money which remained after the deed of trust was satisfied % I think not.
But it is contended that the decree is for too much ; that the surplus, after paying the trust debts, was only §1,297.07. This sum is much less than it should be.
The judge then proceeded to examine the evidence, and made a statement of the proceeds of the property and the debts properly paid by the trustee, showing a larger amount which should have been in the hands of the trustee than was decreed against him. He then proceeded :•
The next objection made to the decree, which I shall notice, is, that it is not consistent with the case made by the bill, and the relief asked. The bill sets out the plaintiffs’ judgments, which were liens upon Mitchell’s land, subject to the incumbrance of the deed of trust, and charges that the deed of trust was fraudulent, and made to hinder, delay and defraud the plaintiffs in obtaining satisfaction of their several judgments ; and that frauds were practiced to their prejudice in its administration ; and they ask that it may be sefaside, and that the land may be re-' sold for the payment of their judgments, and for other and further relief, as the nature of their case1 requires, &c. The Circuit court being of opinion that the allegation of fraud was not proved, and that the sale ought not to be" *130 set aside, but that the plaintiffs had liens upon the land, subject to the trust debts, and that the surplus of the trust fund, after paying the trust debts, was the purchase money due from Uuckols and Gregory, which had been paid into court, pursuant to the prayer of' the bill filed by A. F. Gregory in connection with this cause, and which was amalgamated with it; and that said fund was liable to the plaintiffs’ judgments ; perpetually injoined Eli C. Hale from proceeding to execute his judgment against said Huckols and Gregory ; and decreed that the said sum be paid in satisfaction of plaintiffs’ judgments, according to their priority. I am of opinion that there is no error in the decree bn that ground, and that the said objection must be overruled.
The only other objection, which I deem it necessary to notice, is the want of proper parties ; because John D. McCamant, for whose benefit the judgments in favor of Dickenson and Uuckols were recovered at law, is not made a party. The said judgments are set out in the bill as having been recovered at law, for the benefit of said McCamant. Dickenson and Huckols, who were the parties plaintiffs in the court of law, which rendered the judgments in their favor, are parties plaintiffs in this proceeding, to obtain satisfaction of those judgments ; and we are of opinion, that as it does not appear from the record, that their right to recover is controverted by the said McCamant, it does not appear that he was a necessary party to this suit. If it was a matter which concerned the appellant, that he should be a party to this proceeding, he ought to have raised the question by plea in the court below. Prima facie, in a suit in equity by a judgment creditor to reach the property of his debtor, and subject it to the satisfaction of his judgment, it is competent for the court to decree in favor of the plaintiff in whose behalf the judgment was rendered ; and payment by the debtor to him, in satisfaction of the decree, would be as effectually a discharge of the debt, and an *131 acquittance to the debtor, as the payment of the judgment would have been ; and it is not necessary, that the person for whose benefit the suit at law was brought, and the judgment was rendered, should be a party in the suit in ■equity, he not having been a party in the suit at law, unless it should appear that he controverted the plaintiffs’ right of recovery; and that could only be made to appear by plea. But, for conformity, the decree may be amended so as to make the payment to these plaintiffs, for the benefit of John D. MeCamant, in accordance with the judgment. Upon the whole, I am of opinion, that there is no error in the decree, to the prejudice of the appellant, and that it should be affirmed.
Decree arrirmed.